UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

MARCO FIDEL CASTELLAR

        Plaintiff,                          <u>MEMORANDUM AND ORDER</u>

   -against-                                 Civil Action No.
                                                   CV-04-3402 (DGT)

MICHAEL CAPORALE, individually
and in his official capacity as a
Special Agent of the Internal
Revenue Service; JOHN McCALLUM,
individually and in his official
capacity as a Supervisory Deputy
of the U.S. Marshals Service;
JOHN SVINOS, individually and in
his official capacity as a
Supervisory Deputy of the U.S.
Marshals Service; RONALD UBALDO,
individually and in his official
capacity as a Deputy of the U.S.
Marshals Service; JHOVANY GOMEZ,
individually and in his official
capacity as a Deputy of the U.S.
Marshals Service; MICHAEL ROMANI,
individually and in his official
capacity as a Deputy of the U.S.
Marshals Service; LOUIS
ZEPPETELLI, individually and in
his official capacity as a Deputy
of the U.S. Marshals Service; and
OTHER UNKNOWN PERSONS,
individually and in their
official capacities as U.S.
Marshals, et al.,

        Defendants.

-------------------------------X


Trager, J.:

     Plaintiff Marco Fidel Castellar ("plaintiff") brings this

action pursuant to <u>Bivens v. Six Unknown Named Agents of Fed.</u>

<u>Bureau of Narcotics</u>, 403 U.S. 388 (1971), against federal agents

Michael Caporale ("Caporale"), John McCallum ("McCallum"), John

Svinos ("Svinos"), Ronald Ubaldo ("Ubaldo"), Jhovany Gomez

("Gomez"), Michael Romani ("Romani"), Louis Zeppetelli

("Zeppetelli") and "other unknown persons" (collectively

"defendants").[1]    Plaintiff alleges that defendants violated his

civil rights during and immediately after his arrest on May 19,

2004.  Specifically, plaintiff claims that defendants: (1) used

excessive force against him while arresting him at his home on

Skillman Avenue in Woodside, New York; (2) illegally searched his

home and seized his property after the arrest;[2] and (3) assaulted

him once he was in custody at 500 Pearl Street in Manhattan, New

York.[3]

_____

[1] Plaintiff does not explicitly state in his complaint that
this is a <u>Bivens</u> action but does so in his papers on the instant
motions.  <u>See</u> Pl.'s Mem. Law in Opp'n Defs.' Mot. Pursuant to
Rule § 12(b)(1), Rule § 12(b)(6) and Rule § 56 of the Fed. Rules
of Civ. Proc. ("Pl.'s Mem. Opp'n to Defs.' Mot.") at 5 n.2.
Although plaintiff was proceeding pro se when he filed his
complaint, he was represented by counsel in the instant motions.
However, on August 26, 2010, plaintiff moved to relieve his
attorney and to proceed pro se. This motion is currently pending
before the Court.

[2] In his complaint, plaintiff mentions an "illegal search,"
but only in connection to his excessive force claim.  Pl.'s
Second Amended Compl. ("SAC") ¶ 9.  Counsel has clarified that
plaintiff alleges a claim for illegal search and seizure,
separate from and in addition to his excessive force claim.
Pl.'s Mem. Opp'n to Defs.' Mot. at 6.

[3] In his SAC, plaintiff asserts what appear to be common-law
tort claims for, <u>inter alia</u>, negligent supervision, negligent
hiring, negligent infliction of emotional distress and

Defendants Caporale, Zeppetelli and McCallum move for
summary judgment on plaintiff's Skillman Avenue excessive force
claim.  Additionally, defendants collectively move for summary
judgment on plaintiff's 500 Pearl excessive force claim.[4]  Both
parties move for summary judgment on plaintiff's search and
seizure claim.[5]  For the reasons stated below: (1) defendants'
Caporale, Zeppetelli and McCallum's motion for summary judgment

_____

intentional infliction of emotional distress.  See SAC ¶¶ 50, 52-
53, 55-56.  However, the Federal Tort Claims Act ("FTCA")
provides federal employees with immunity from common-law tort
claims.  Celestine v. Mount Vernon Neighborhood Health Ctr., 403
F.3d 76, 80 (2d Cir. 2005).  Plaintiff's tort claims are
therefore dismissed with prejudice.

    [4] Plaintiff initially brought a Bivens claim against
defendants in their official capacities.  However, defendants
moved to dismiss this claim on the basis that a Bivens action may
not lie against federal officers in their official capacities.
See Defs.' Mem. in Supp. Mot. to Dismiss Compl. Against Defs. in
their Official Capacities and for Partial Summ. J. for Defs. in
their Individual Capacities ("Defs.' Mem. in Supp.") at 13-14.
Defendants are correct that "[t]he only remedy available in a
Bivens action is an award for monetary damages from defendants in
their individual capacities."  Higazy v. Templeton, 505 F.3d 161,
169 (2d Cir. 2007) (emphasis added).  Plaintiff now concedes this
point and agrees that the claim against defendants in their
official capacities should be dismissed.  Pl.'s Mem. Law in Opp'n
to Defs.' Mot. Pursuant to Rule § 12(b)(1), Rule § 12(b)(6) and
Rule § 56 of the Federal Rules of Civil Procedure ("Pl.'s Opp'n)
at 5 n.2.  As such, this claim is dismissed with prejudice.

    [5] Plaintiff's motion for partial summary judgment regarding
his search and seizure claim is asserted for the first time in
his brief on defendants' motions for summary judgment.  See Pl.'s
Opp'n at 7.  In response to plaintiff's belated motion,
defendants appear to have now moved for summary judgment on the
search and seizure claim.  See Defs.' Mem. of Law in Reply to
Pl.'s Mem. in Opp'n to Defs.' Mot. ("Defs.' Reply") at 8.  Given
that both parties have addressed plaintiff's claim in their
briefs, their motions will be discussed here.

on plaintiff's Skillman Avenue excessive force claim is granted;
(2) defendants Ubaldo, Gomez, Romani and Zeppetelli's motion for
summary judgment on plaintiff's 500 Pearl excessive force claim
is granted; (3) defendants Svinos, Caporale and McCallum's motion
for summary judgment on plaintiff's 500 Pearl excessive force
claim is denied; (4) plaintiff's motion for summary judgment on
the search and seizure claim is denied; and (5) defendants'
motion for summary judgment on the search and seizure claim is
granted.

**Background**

**(1)**

**The Underlying Criminal Case Against Plaintiff**

The initial events leading up to plaintiff's arrest on May
19, 2004 are not in dispute.  On July 22, 2003, plaintiff was
charged in the Southern District of New York with thirty-eight
counts of filing fraudulent income tax returns, obstruction of
justice and witness tampering.  Defs.' Ex. B.  On or about May
13, 2004, while plaintiff's criminal proceeding was pending,
plaintiff told his girlfriend Miriam Torres ("Torres") that if
federal officers came to his house, he would "blow their brains
out."  Pl.'s Dep. at 11:19-24; <u>see also</u> <u>United States v.</u>
<u>Castellar</u>, No. 03-CR-891, 2004 WL 1872293, at *1 (E.D.N.Y. Aug.

19, 2004). Torres then reported this statement to the prosecutor trying plaintiff's case. Pl.'s Dep. at 9:19-21. On May 14, 2004, the Honorable Jed S. Rakoff ("Judge Rakoff") of the United States District Court for the Southern District of New York issued a warrant for plaintiff's arrest on charges of threatened violence to law enforcement officers, obstruction of justice and witness tampering while released on bail. Defs.' Ex. E. Pursuant to this warrant, plaintiff was arrested on May 19, 2004, which is the event at issue in the instant action.[6] Pl.'s Dep. at 10:18-21. On August 10, 2004,[7] plaintiff filed this action, claiming that his civil rights were violated during and immediately after his May 19, 2004 arrest.

## (2)

### Plaintiff's Arrest at Skillman Avenue

Construing the record in the light most favorable to plaintiff, the facts pertaining to plaintiff's arrest are as follows. At approximately 7:30 A.M. on May 19, 2004, defendants

---

[6] On August 30, 2004, plaintiff was found guilty of five counts of making false claims to the Internal Revenue Service ("IRS"), one count of conspiring to make such claims and one count of obstruction of justice. Defs.' Ex. D.

[7] Although the original complaint bears a stamp that it was received by the court's pro se office on July 14, 2004, the complaint was not filed and docketed until August 10, 2004.

forced open the front door of plaintiff's residence, located at 5015 Skillman Avenue in Woodside, New York. Pl.'s Dep. at 10:18-21. Plaintiff was sleeping in his bedroom, located on the second floor of his home, when he was awakened to: "Mr. Castellar, your bail has been revoked." Id. at 14:4-11. Ubaldo, a Deputy United States Marshall ("DUSM") for the United States Marshals Service, entered plaintiff's bedroom, followed by DUSMs Gomez, Svinos and Romani. Id. at 17:21-24.

After they entered his bedroom, plaintiff remained in his bed and placed his hands on his head. Id. at 14:12-14. According to plaintiff, Ubaldo then slammed his shield against plaintiff's "whole body," including his face, chest and legs.[8] Id. at 19:21, 20:5-13. While Ubaldo's shield was pressed against plaintiff, Svinos kicked him.[9] Id. at 21:13-15; 27:6-9. At some point, plaintiff fell off the bed and onto the floor, and was kicked on both sides of his body, near his kidneys.[10] Id. at 29:

_____

[8] Ubaldo claims that he remained outside plaintiff's home during the arrest and denies that he hit plaintiff with a shield. See Defs.' Reply to Pl.'s 56.1 State. ¶¶ 15-18; see also Ubaldo Decl. ¶¶ 6-7. However, Ubaldo has not moved for summary judgment on plaintiff's Skillman Avenue excessive force claim. Therefore, this disputed fact is immaterial to the instant motions.

[9] Svinos denies that he kicked plaintiff. Defs.' Reply to Pl.'s 56.1 State. ¶ 19. Defense counsel has not moved for summary judgment with regard to Svinos's alleged conduct at Skillman Avenue. Therefore, this disputed fact is also immaterial to the instant motions.

[10] From plaintiff's 56.1 statement, it appears that plaintiff was kicked only by Svinos. Pl.'s Local Civil Rule 56.1

3-9.  Plaintiff claims that although the officers instructed him
to place his hands behind his back, they continued to press
against his body, which prevented him from complying with their
instructions.  Id. at 29:18-21.  Plaintiff further claims that he
asked repeatedly: "Why are you hurting me? Why are you hitting
me?" and began to cry from pain in his left shoulder and left
eye.  Id. at 30:1-3, 11-12, 14-15.  According to plaintiff, the
officers then "forcefully handcuffed" him.  Id. at 30:5.  After
he was handcuffed, Svinos told Ubaldo to "[t]ake off
[plaintiff's] ring" and to "[c]ut his finger off."  Id. at 23:6-
12.  Plaintiff states that although Svinos was joking about
cutting his finger off, Id. at 38:10, he still forced the ring
off of plaintiff's hand.  Id. at 23:6-12.  Defendants then took
plaintiff downstairs to the kitchen, where he waited until he was
placed into a police car.  Id. at 34:14-25.

According to plaintiff, while he was waiting in the kitchen,
defendants searched plaintiff's house without his consent.[11]
Pl.'s Dep. at 32:7, 34:23-24.  Plaintiff states that he did not
actually witness this alleged search, but heard about it later

_____

Statement in Opp'n to Defs.' Local Civil Rule 56.1 Statement
("Pl.'s 56.1") ¶ 19.  However, in his deposition, plaintiff seems
to indicate that he was kicked first by Svinos while he was on
his bed and then again by one of the other agents after he fell
on the floor.  Pl.'s Dep. at 27:7-9; 29:3-5.

[11] Although the facts of the alleged search are disputed,
the parties agree that there was no search warrant issued.  Pl.'s
56.1 ¶ 27; see also Defs.' Reply to Pl.'s 56.1 State. ¶ 27.

from Deborah Vasallo, who lived in plaintiff's house.[12]  Pl.'s
Dep. at 32:12-17, 33:22; Pl.'s Ex. Y.  Plaintiff claims that
defendants "wrecked" his bedroom, removed $3,000 from plaintiff's
safe and took his camera and ring.  Pl.'s Dep. at 51:1, 5, 7;
Pl.'s Exs. W and Z.  Plaintiff states that although the $3,000
was returned to him, Pl.'s Dep. at 34:4-8, he did not get back
his ring and camera.  Id. at 51:4-16.  However, plaintiff admits
that he did not return to his home following his arrest, and thus
never saw the alleged damage to his bedroom and only learned from
his niece that his camera was missing.  Id. at 33:7-14; 51:10-14.

Defendants' account of the events surrounding the arrest is
quite different from plaintiff's version.  Defendants claim that
when they entered the bedroom, plaintiff remained in bed with his
hands underneath a blanket and refused to show his hands when
instructed to do so.  Svinos Dep. at 24:3-9, 26:16-20.[13]
According to defendants, plaintiff "actively resist[ed]" arrest,
"wrestling with the marshals" and "physically struggling to
inhibit them from putting the handcuffs on him."  Caporale Dep.

---

[12] It is not entirely clear if Vasallo lived in plaintiff's
house.  Plaintiff states that he "had a girl living" with him,
Pl.'s Ex. Y., and also states that Vasallo was in the house
during the arrest and subsequent search.  Pl.'s Dep. at 32:23-24.

[13] Although only Caporale and Svinos were deposed, it
appears from the record that all defendants are in agreement as
to what occurred at Skillman Avenue.  See Defs.' Exs. L-R.  As
such, this opinion refers to Caporale's and Svinos' depositions
as representative of all defendants.

at 33:5-14; <u>see also</u> Testimony of Caporale from Plaintiff's Bail Revocation Hearing Before Judge Rakoff on June 23, 2004, annexed to Pl.'s First Amended Complaint, Ex. 2 ("Caporale Bail Revocation Testimony") at 68:1-25 (stating that plaintiff "was very argumentative and resistant" during the arrest and that "it took three or four . . . U.S. Marshals to physically subdue him"). Defendants admit that, in an attempt to restrain plaintiff, Svinos "grabbed [plaintiff's] arm and put it behind his back." Svinos Dep. at 30:8-9.

Defendants deny that anything was seized from plaintiff's residence. Caporale Dep. at 36:17-20, 38:2-8. Additionally, defendants claim that they did not search plaintiff's bedroom, but that Vasallo, plaintiff's roommate, consented to a search of her bedroom and the living room. <u>Id.</u> at 36:23-24; Caporale Bail Revocation Testimony at 75:14-16.

It is undisputed, however, that the other defendants in this action, Caporale, an IRS agent, McCallum, the supervisory DUSM responsible for overseeing the arrest and Zeppetelli, also a DUSM, did not enter plaintiff's bedroom during the arrest. Pl.'s 56.1 ¶ 10. Caporale remained outside of the bedroom,[14] McCallum was on the ground floor of plaintiff's residence interviewing a witness

---

[14] Caporale's declaration simply states that he "was not present in the bedroom where the handcuffs were placed upon Castellar." Caporale Decl. ¶ 4. Defendants state in their motion papers that Caporale "remained outside the room during the arrest." Defs.' Mem. in Supp. at 16.

and Zeppetelli was outside of the house securing the perimeter. <u>See</u> Caporale Decl. ¶ 4; McCallum Decl. ¶ 6; Zeppetelli Decl. ¶ 6; <u>see also</u> Defs.' Mem. in Supp. at 16; Pl.'s 56.1 ¶ 10.

### (3)

### Events at 500 Pearl

After the arrest, Svinos, McCallum and Caporale transported plaintiff in a car to the United States District Court for the Southern District of New York at 500 Pearl Street ("500 Pearl"). Pl.'s Dep. at 35:1-4, 37:13-17, 38:4; Caporale Dep. at 38:10-20. Plaintiff claims that during the trip to 500 Pearl, Svinos spoke to plaintiff "in a threatening way" and screamed at him when plaintiff attempted to speak. Pl.'s Dep. at 38:5-6, 14-15. Plaintiff states that he "really got scared" when Svinos yelled at him. <u>Id.</u> at 38:15.

According to plaintiff, when they arrived at 500 Pearl, Svinos, McCallum and Caporale escorted him downstairs to the building's sub-basement, which contained a security camera. <u>Id.</u> at 38:15-19, 40:10-20. Plaintiff then threatened to sue Svinos and told him that he "was just a bully." <u>Id.</u> at 38:20-22. In response, Svinos pushed plaintiff against the wall of the sub-basement with his body. <u>Id.</u> at 38:24-25, 39:3-4. While repeatedly pushing him, Svinos asked plaintiff twice, "You want to

catch another charge?"  Id. at 39:2-6.  Plaintiff states that he

felt pain from having his "handcuffs [pressed] against the wall."

Id. at 41:13-18.  Plaintiff further states that Svinos did not

"slap[] him or anything like that" and that Svinos "was just being

a bully."  Id. at 41:18-19.  When plaintiff warned Svinos about

the security camera, "McCallum pushed [plaintiff] away from the

camera."  Id. at 39:6-8.


### (4)

### Plaintiff's Alleged Injuries

Plaintiff claims that he suffered both physical and

psychological injuries as a result of his arrest.[15]  According to

plaintiff, he now suffers from chronic back and eye pain.  Pl.'s

Ex. R; Pl.'s Mem. Opp'n to Defs.' Mot. at 12.  Additionally,

plaintiff claims that he remains terrified of Svinos to the point

that he "think[s] that [Svinos is] going to walk in [his] house

_____

[15] It is unclear from the record if plaintiff's injuries
were caused during the arrest at Skillman Avenue or subsequently
at 500 Pearl.  In a July 2, 2010 order, Magistrate Judge Lois
Bloom granted defendants' request to reopen discovery in order to
compel plaintiff to provide third-party medical records regarding
his alleged physical and psychological injuries. On July 19,
2010, plaintiff's counsel provided defendants with the necessary
authorizations to obtain plaintiff's medical records. However, on
August 26, 2010, plaintiff moved to proceed pro se and objected
to the release of any further medical information.  As stated
above, plaintiff's newest motion is currently pending.

and shoot [him]."  Pl.'s Dep. at 41:9-12.  Additionally, from May

19, 2008 to March 20, 2009, plaintiff attended weekly

psychotherapy sessions with a licensed social worker to treat his

nightmares caused by the arrest.  See Pl.'s Ex. S.


## Discussion

### (1)

### Bivens Action

A Bivens action is a judicially created remedy that allows a

plaintiff to state a cause of action for money damages against

federal officers for violating certain constitutional provisions.

Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007).  "As a

prerequisite to recovery against a defendant under Bivens, a

plaintiff must allege [] defendant's personal involvement in the

alleged constitutional violation."  Brown v. Lindsay, Nos.

08-CV-351, 08-CV-2182, 2010 WL 1049571, at *16 (E.D.N.Y. Mar. 19,

2010); see also Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)

(stating that a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular

defendant in order to prevail in a Bivens action).

However, "[p]ersonal involvement . . . is not limited to

direct participation in the deprivation of rights at issue."

Younger v. City of New York, 480 F. Supp. 2d 723, 731 (S.D.N.Y.

2007) (internal quotation marks omitted).  Specifically, "[a]
police officer has an affirmative duty to intercede on the behalf
of a citizen whose constitutional rights are being violated <u>in his</u>
<u>presence</u> by other officers."  <u>Ricciuti v. N.Y.C. Transit Auth.</u>,
124 F.3d 123, 130 (2d Cir. 1997) (emphasis added) (internal
citations and quotations omitted).  This duty to intervene, often
referred to as "bystander liability," attaches to an officer when
"that officer observes or has reason to know: (1) that excessive
force is being used; (2) that a citizen has been unjustifiably
arrested; or (3) that any constitutional violation has been
committed by a law enforcement official."[16]  <u>Anderson v. Branen</u>, 17
F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  "In
order for liability to attach, there must have been a realistic

---

[16] It is unclear if <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937
(2009) impacts on an officer's duty to intercede on behalf of a
citizen whose constitutional rights are being violated by others.
In <u>Iqbal</u>, the Supreme Court held that an officer is "only liable
for his or her own misconduct" and that "a supervisor's mere
knowledge of his subordinate's discriminatory purpose [does not]
amount[] to the supervisor's violating the Constitution."  <u>Id.</u> at
1948-49.  Although <u>Iqbal</u> specifically addresses a supervisor-
employee relationship, it nevertheless may be that in general,
something more than mere knowledge or observation of a
constitutional violation is now necessary in order to be liable
in a <u>Bivens</u> action.  However, the Second Circuit has not yet
addressed this issue, and courts within the Second Circuit have
continued to uphold an officer's duty to intercede since <u>Iqbal</u>.
<u>See, e.g.</u>, <u>Betancourt v. Slavin</u>, 676 F. Supp. 2d 71, 78 (D. Conn.
2010) ("An officer is liable for failure to intercede where the
officer observes that excessive force is being used or has reason
to know that it will be used.) (internal quotations omitted);
<u>Sash v. United States</u>, 674 F. Supp. 2d 531, 545 (S.D.N.Y.
2009)(same); <u>Slacks v. Gray</u> , No. 07-CV-510, 2009 WL 3164782, at
*13 (N.D.N.Y. Sept. 29, 2009)(same).

opportunity to intervene to prevent the harm from occurring."  <u>Id.</u>


**(2)**

**Claims Arising from Plaintiff's Arrest at Skillman Avenue**

**a.  Caporale, McCallum and Zeppetelli's Motion for Summary Judgment on Plaintiff's Skillman Avenue Excessive Force Claim**

Caporale, McCallum and Zeppetelli argue that they cannot be held liable under <u>Bivens</u> for plaintiff's Skillman Avenue excessive force claim because they were not present in plaintiff's bedroom during the arrest, a fact undisputed by plaintiff.[17]  Defs.' Mem. in Supp. at 16.

Indeed, plaintiff has failed to show that Caporale, McCallum and Zeppetelli were "personally involved" because the alleged excessive force did not occur in their presence.  Plaintiff presents no evidence that they were anywhere close enough to the bedroom to witness the alleged force and have "a realistic opportunity to intervene."  <u>See</u> <u>Harvey v. N.Y. City Police Dep't</u>, 93-CV-7563, 1997 WL 292112, at *1 (S.D.N.Y. June 3, 1997) (finding no personal involvement when officer, although standing in the entryway to the apartment in which plaintiff was arrested, was not present in or near the bedroom where the arrest and beatings took

---

[17] The other defendants, Ubaldo, Svinos, Gomez and Romani, are not moving for summary judgment on plaintiff's first claim.

14

place).  As stated above, during the arrest, Zeppetelli was outside of the house securing the perimeter, Defs. Ex. R, McCallum was on the ground floor of plaintiff's residence interviewing a witness, Defs.'s Ex. M, and Caporale remained outside of the bedroom, Defs.' Mem. in Supp. at 16; see also supra n.14.

There is also no evidence that they knew the other officers were intending to use or were in fact using excessive force.  See Sash v. United States, 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009) (finding no personal involvement where defendant officers were not aware that the other officers were going to use excessive force); see also supra n.16.  Thus, Caporale, McCallum[18] and Zeppetelli lack the personal involvement necessary to sustain Bivens liability and are granted summary judgment on plaintiff's Skillman Avenue excessive force claim.

---

[18] Despite the fact that McCallum was the supervisory DUSM at the arrest, he cannot be held accountable under a theory of supervisory liability.  It is unclear what remains of supervisory liability post-Iqbal.  See Qasem v. Toro, 09-CV-8361, 2010 WL 3156031, at *3 (S.D.N.Y. Aug. 10, 2010) ("The Second Circuit has not yet addressed how Iqbal affects the . . . supervisory liability [analysis].")  As stated above, Iqbal held that "a supervisor's mere knowledge of his subordinate's discriminatory purpose [does not] amount[] to the supervisor's violating the Constitution."  Iqbal, 129 S. Ct. at 1949.  Even assuming that some form of supervisory liability still exists, there is no evidence that McCallum had any knowledge of the alleged use of force in plaintiff's bedroom.  It should also be noted that plaintiff does not even raise a theory of supervisory liability.

**b. Plaintiff's and Defendants' Motions for Summary Judgment on the Search and Seizure Claim**

Plaintiff contends that he is entitled to summary judgment on his illegal search and seizure claim. Pl.'s Opp'n at 7. Defendants have also moved for summary judgment on the search and seizure claim, arguing that plaintiff "has not adduced a scintilla of evidence to support his purported claim." Defs.' Mem. of Law in Reply to Pl.'s Mem. in Opp'n to Defs.' Mot. ("Defs.' Reply") at 11; see also supra n.5.

Defendants are correct that plaintiff has not presented any evidence to support his claim. In fact, plaintiff's only evidence of the search is his deposition testimony, in which he explicitly states that he did not witness the actual search and that he learned about it only later from Vasallo, who has not submitted an affidavit here. This constitutes inadmissible hearsay evidence and is insufficient to support plaintiff's claim. Moreover, plaintiff does not attribute the search to any specific officer, thus failing to present evidence of personal involvement, as required to sustain a Bivens claim. Instead, plaintiff merely claims broadly that all defendants were involved in the search. Plaintiff offers no reason as to why he has failed to present any evidence identifying the specific officers involved in the search. Nor is it possible to infer which ones were personally involved. Indeed, as established above, it is clear that some of the officers were not even present in plaintiff's home during the arrest, making it very unlikely that

16

they participated in the alleged search.  Given plaintiff's lack of
admissible evidence to support his claim and his failure to
demonstrate personal involvement, his motion for summary judgment
is denied and defendants' motion for summary judgment is granted.


### (3)

### Claims Arising From Alleged Conduct at 500 Pearl

**a.   Ubaldo, Gomez, Romani and Zeppetelli's Motion for Summary
Judgment on Plaintiff's 500 Pearl Excessive Force Claim**

Ubaldo, Gomez, Romani and Zeppetelli argue that they are
entitled to summary judgment on plaintiff's 500 Pearl excessive
force claim because plaintiff has failed to show that they were
personally involved in the alleged conduct.  As discussed above,
"personal involvement of defendants in alleged constitutional
deprivations is a prerequisite to an award of damages" in a <u>Bivens</u>
action.  <u>Farid v. Ellen</u>, 593 F.3d 233, 249 (2d Cir. 2010)
(internal citations omitted).  Plaintiff clearly states that only
Caporale, McCallum and Svinos were in the vehicle that transported
him to 500 Pearl and then later involved in the alleged assault
there.  Pl.'s Dep. at 35:2-5, 37:15-17, 40:14.  Therefore, Ubaldo,
Gomez, Romani and Zeppetelli are granted summary judgment on
plaintiff's 500 Pearl excessive force claim.

**b.  Svinos' Motion for Summary Judgment on Plaintiff's 500 Pearl Excessive Force Claim**

Plaintiff claims that Svinos used excessive force against him in the sub-basement at 500 Pearl.  Specifically, plaintiff claims that Svinos used his body to repeatedly push plaintiff against a wall.  Pl.'s Dep. at 39:3-4.  Svinos, however, argues that he is entitled to summary judgment because this alleged conduct does not rise to the level of a constitutional violation.

The first step in addressing an excessive force claim is to identify the specific constitutional right allegedly infringed by the challenged use of force.  Graham v. Connor, 490 U.S. 386, 394 (1989).  In Graham, the Supreme Court held that an excessive force claim arising out of an arrest must be analyzed under the Fourth Amendment.  Id. at 395.  However, the Graham Court left open the question of whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins.  See Ivey v. Lyman, 02-CV-470, 2005 WL 1397134, at *3 (N.D.N.Y. June 1, 2005); Turkmen v. Ashcroft, No. 02-CV-2307, 2006 WL 1662663, at *40 (E.D.N.Y. June 14, 2006), vacated on other grounds by Turkmen v. Ashcroft, 589 F.3d 542 (2d Cir. 2009).

After Graham, the Second Circuit held that "the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or

18

formally charged, and remains in the custody . . . of the arresting officer." Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989); see also Blake v. Base, 90-CV-0008, 1998 WL 642621, at *11 (N.D.N.Y. Sept. 14, 1998) ("[I]t seems that if confronted squarely with the issue, the Second Circuit would hold that when a plaintiff alleges that excessive force was used against him before he was arraigned or formally charged, the Fourth Amendment governs such a claim.") Accordingly, given that plaintiff had not yet been arraigned or formally charged during Svinos' alleged conduct at 500 Pearl, plaintiff's excessive force claim should be analyzed under the Fourth Amendment.

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham, 490 U.S. at 397). The test of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. In determining whether the force used during an arrest was reasonable, a court considers how a reasonable officer facing the

same circumstance would have behaved.  Id. at 396.  However, "a de minimis use of force will rarely suffice to state a constitutional claim."  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

Construing the evidence in the light most favorable to plaintiff, a reasonable juror could find that the force used by Svinos was "objectively unreasonable."  When Svinos allegedly pushed plaintiff against the wall, plaintiff was already handcuffed and therefore restrained.  Although it is well-established that "not every push or shove . . . violates the Fourth Amendment," Graham, 490 U.S. at 396, courts have also held that even a single push may be deemed unreasonable where the arrestee is handcuffed and fully cooperating with the police officers.  See, e.g., Hamilton v. City of New York, Nos. 07-CV-3633, 07-CV-3825, 2009 WL 2226105, at *9 (E.D.N.Y. July 23, 2009) (holding that it was objectively unreasonable for an officer to trip plaintiff once he was already handcuffed and fully cooperating); Espada v. Schneider, 522 F. Supp. 2d 544, 555-56 (S.D.N.Y. 2007) (noting that there is no objective justification for striking an arrestee after he or she is handcuffed and subdued); Pierre-Antoine v. City of New York, No. 04-CV-6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (noting that it is harder for an officer to maintain that force was necessary where such force was used while plaintiff was in handcuffs); Graham v. Springer, No. 03-CV-6190, 2005 WL 775901, at *6 (W.D.N.Y. Apr. 5,

2005) (denying summary judgment on plaintiff's excessive force claim where plaintiff's evidence indicated that he was kicked while lying on the ground in handcuffs).

Assuming plaintiff was indeed cooperating with the officers, there would be no justification for Svinos to repeatedly push plaintiff into the wall with his body when there was no apparent reason to do so. Plaintiff admits that he threatened to sue Svinos and called him a bully immediately prior to being pushed up against the wall. Pl.'s Dep. at 38:20-24. It is therefore possible that plaintiff was not fully cooperating with the officers and that some force was necessary to subdue him. However, the exact nature of plaintiff's comments and behavior prior to Svinos' actions is unclear from the record. Defendants have not offered any evidence as to plaintiff's decorum at 500 Pearl.[19] Thus, because this issue of fact remains unresolved, it cannot be determined at this stage if Svinos' use of force was reasonable under the circumstances.

Defendants argue that any force used by Svinos did not rise to the level of a constitutional violation because plaintiff does not allege any injuries resulting from the events at 500 Pearl. Defs.' Reply at 21. As pointed out by defendants, the only pain that plaintiff referenced in his deposition when describing the

---

[19] Oddly enough, although defendants have submitted declarations and depositions that discuss the arrest at Skillman Avenue, none of their evidence addresses the events at 500 Pearl.

events at 500 Pearl was the pain resulting from the handcuffs pressing against the wall.  Id.  Although plaintiff states that in general, he now suffers from chronic back, shoulder and eye pain, these are injuries unlikely to have resulted from handcuffs being pressed against a wall.[20]  Defendants also point to the fact that plaintiff clearly states in his deposition that he was merely pushed but not struck.  Defs.' Reply at 21.

However, a plaintiff need not sustain serious injury in order to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment.  Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987).  Rather, "[i]f the force used was unreasonable . . . the plaintiff may recover even if the injuries inflicted were not permanent or severe."  Id.  Thus, the fact that plaintiff's injuries from 500 Pearl were possibly minimal does not detract from the unreasonableness of Svinos repeatedly pushing plaintiff against the wall while he was handcuffed.  Although plaintiff may only be entitled to nominal damages depending on the severity of injury he is able to prove, his claim against Svinos nonetheless survives summary judgment.[21]

---

[20] More likely injuries might include permanent swelling, inflammation, numbness or soreness of plaintiff's wrists.

[21] It should be noted that the bulk of plaintiff's deposition testimony focuses on Svinos' alleged verbal threats. However, verbal harassment or threats alone do not constitute a violation of any federally protected right and are therefore not actionable.  Richardson v. Castro, No. 97-CV-3772, 1998 WL 205414, at *5 (E.D.N.Y. Apr. 24, 1998).

22

## c. Caporale and McCallum's Motion for Summary Judgment

Caporale and McCallum's motion for summary judgment on plaintiff's 500 Pearl excessive force claim is also denied. As stated above, even where an officer does not personally use excessive force, but witnesses the use of excessive force by other officers, he or she may be liable for failing to intercede to prevent the constitutional violation. Caporale and McCallum were present to witness Svinos' alleged behavior at 500 Pearl, and their liability therefore depends on Svinos' liability. Because there is a question of fact as to whether Svinos' actions rose to the level of a constitutional violation, Caporale and McCallum's motion for summary judgment must be denied.[22]

## d. Qualified Immunity

Although defendants only raise qualified immunity as it applies to Svinos' behavior at 500 Pearl, this opinion addresses its application to Caporale and McCallum as well. Defs.' Reply at 5-8. Qualified immunity "shields police officers acting in their official capacity from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Jones v. Parmley, 465 F.3d

---

[22] In his deposition, plaintiff stated that "McCallum pushed [him] away from the camera" in the sub-basement at 500 Pearl. Pl.'s Dep. at 39:6-8. It does not appear that plaintiff includes this alleged conduct as part of his excessive force claim.

46, 55 (2d Cir. 2006) (internal citations omitted).  A police
officer is entitled to qualified immunity from federal claims
where: "(1) his conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known, or (2) it was 'objectively reasonable' for him
to believe that his actions were lawful at the time of the
challenged action."  Jenkins v. City of New York, 478 F.3d 76, 87
(2d Cir. 2007).

In Saucier v. Katz, the Supreme Court held that qualified
immunity applies to Fourth Amendment excessive force claims,
thereby giving the defendant officer who allegedly used excessive
force two levels of reasonableness protection – one under the
Fourth Amendment and the second under qualified immunity.  533
U.S. 194, 205-06 (2001).  Thus, even if an officer used force that
was objectively unreasonable under Graham, he may still be
protected from individual monetary liability if he reasonably
believed, based upon the facts and circumstances known to her,
that the force used was lawful.  Id.

However, Svinos, Caporale and McCallum cannot benefit from
qualified immunity here.  The reasonableness of Svinos' use of
force, if any, cannot be evaluated because, as set forth above, it
is unclear if the circumstances at 500 Pearl called for the use of
force.  Cf. Edwards v. City of New York, No. 08-cv-2199, 2010 WL
3257667, at *4 (E.D.N.Y. Aug. 16, 2010) (denying qualified

24

immunity where the reasonableness of the force under the circumstances was a question of fact).  Specifically, a question remains as to whether plaintiff was cooperating with the officers, or instead needed to be subdued in order to proceed with his arraignment at 500 Pearl.  Given this remaining issue of fact, it is impossible to determine whether the officers reasonably believed that Svinos' force was not excessive.  <u>See, e.g.</u>, <u>Curry v. City of Syracuse</u>, 316 F.3d 324, 334 (2d Cir. 2003) (denying summary judgment on the basis of qualified immunity where a material fact was in question and it could therefore not be determined whether the officers reasonably believed that their force was not excessive).  As such, Svinos, Caporale and McCallum are not entitled to qualified immunity.


## Conclusion

For the foregoing reasons, defendants' Caporale, Zeppetelli and McCallum's motion for summary judgment on plaintiff's Skillman Avenue excessive force claim is granted.  Defendants Ubaldo, Gomez, Romani and Zeppetelli's motion for summary judgment on plaintiff's 500 Pearl excessive force claim is granted.  Defendants Svinos, Caporale and McCallum's motion for summary judgment on plaintiff's 500 Pearl excessive force claim is denied.  Finally, plaintiff's motion for summary judgment on the search and

seizure claim is denied, and defendants' motion for summary judgment on that same claim is granted.  Thus, the following claims remain in this action: (1) plaintiff's Skillman Avenue excessive force claim against Ubaldo, Svinos, Gomez and Romani; and (2) plaintiff's 500 Pearl excessive force claim against Svinos, Caporale and McCallum.

Dated:      Brooklyn, New York
            September 1, 2010


                              SO ORDERED:

                              _____/s/_____
                              David G. Trager
                              United States District Judge